IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOHNNY R. SOUTHWARD, | ) |
|     Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 2:11CV375-SRW |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
|     Defendant. | ) |

**MEMORANDUM OPINION**

Plaintiff Johnny R. Southward brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability and disability insurance benefits under Title II of the Social Security Act.[1] The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). (Docs. ## 8, 9). Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

---

[1] In the present action, plaintiff appeals the Title II decision of the ALJ. (See Complaint, ¶¶ 1, 2, 5; see also Doc. # 11, Plaintiff's brief, first sentence ("The plaintiff . . . filed applications for disability insurance benefits 07/16/2007, alleging a disability onset date of 06/01/2007."). Plaintiff filed a Title XVI application concurrently with his Title II application; both were denied initially at the same time. (R. 113-21, 182-84). The Commissioner's brief suggests that the ALJ also considered plaintiff's Title XVI application (see Doc. # 12, p. 1); however, the record makes clear that he did not. (See R. 18, 36, 44, 140-41, 144-45, 159-60, 165-66). On March 9, 2011, the Appeals Council denied review of the ALJ's decision (R. 1-3).Therefore, the final decision of the Commissioner that is before this court for review is the ALJ's decision on plaintiff's Title II claim.

**STANDARD OF REVIEW**

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

**BACKGROUND**

Plaintiff filed his application for benefits on July 16, 2007, when he was 31 years old, alleging an onset of disability several weeks earlier, on June 1, 2007, due to bipolar disorder, hearing voices, problems hearing, mood swings, headaches, drugs, and back problems. (R. 113, 215, 223). Plaintiff had just completed his third year of college, and reported inpatient and outpatient mental health treatment in June and July 2007, stating that he lost

2

his job when he was "admitted involuntarily into the hospital" for four weeks. (R. 218-21, 242). While he admitted that he was treated at Meadhaven for substance abuse, he denied current use. (R. 244-45). He described past work as a cook, cashier, security monitor at a casino, and youth program counselor; he also listed other factory, warehouse, and telemarketing jobs. (R. 230-36). After plaintiff's claim was denied initially, he reported increased headaches and depression, an inability to sleep or relate to others, that he seldom goes out in public by himself, and "pain in the left buttocks back and left leg." (R. 249-53).

The medical evidence of record reflects that, late in the evening of June 12, 2007, plaintiff's parents took him to the Baptist Medical Center East emergency department, reporting that his behavior had been different for a few days, and that plaintiff was disoriented and confused. (R. 269). They had found him sitting in the middle of the road that evening. (R. 265). On the intake form, one of his parents reported that he "smokes weed" occasionally and may have smoked some that was laced with something. (R. 256). Lab tests were positive for alcohol and cannabis. (R. 261). Plaintiff reported smoking one or two marijuana cigarettes and drinking a beer. (R. 269). The ER physician diagnosed "THC Abuse" and offered to have plaintiff committed to Baptist Health's Meadhaven unit; plaintiff's parents did not agree to admission, and plaintiff was discharged from the ER. (R. 271).

Four days later, a deputy sheriff brought plaintiff to the Baptist Medical Center South emergency department, pursuant to a court order, for an involuntary psychiatric evaluation.

Plaintiff denied any problems and did not know why he was at the emergency room. He was in no apparent distress, was alert and oriented and responded with ease to the intake nurse. (R. 279). His sister reported that he "had been acting strange for a few weeks, walking in and out of traffic, removing clothing, burning clothing on trampoline, talking to the dog, looking at the sky and thinking someone is coming to get him." (R. 275). His urine drug screen again tested positive for THC. (R. 285, 325). Plaintiff was admitted to Meadhaven with an admitting Axis I diagnosis of "Psychosis, NOS, marijuana dependence, rule out substance abuse psychosis." (R. 275). The admitting physician noted that plaintiff was sedated because he was extremely agitated and aggressive and that he "was extremely inappropriate in the ER upon admission and actually had to be tasered by security." (R. 275-76). On June 21, 2007, by order of the probate court, plaintiff was transferred to the Alabama Department of Mental Health's crisis residential facility, pending admission to Greil Psychiatric Hospital (R. 296-97, 331). At the crisis unit, plaintiff was agitated and hallucinating, and he fought with the staff. (R. 331).

Plaintiff was admitted to Greil on July 6, 2007 and remained there until July 12, 2007, when he was released into his mother's care. (Exhibits 3F, 11F). The Greil psychiatrist, Dr. Casu, diagnosed plaintiff with "Bipolar Disorder, Not Otherwise Specified," "Cannabis Abuse,"[2] and "Personality Disorder Not Otherwise Specified with Paranoid, Compulsive, and Narcissistic Features." (R. 327). His GAF at admission was 50; at discharge, Dr. Casu

---

[2] On admission, plaintiff "reported that he smokes cannabis 'regularly' and drinks seldom." (R. 332; see also R. 337).

assessed plaintiff's GAF at 70.  (Id.). After plaintiff's discharge, he received outpatient treatment from East Central Mental Health for several weeks. (Exhibits 4F, 10F, 12F).  At his August 14, 2007 visit with Dr. Lopez, plaintiff indicated that he was "[g]etting ready to re-start college[.]" (R. 385). On September 5, 2007, he admitting to using marijuana and feeling superhuman and stated that he "needs assistance in dealing with usage." (R. 387).

On September 24, 2007, plaintiff reported to Dr. Lee Stutts, a psychologist, for a consultative examination. (Exhibit 7F). Dr. Stutts reviewed plaintiff's inpatient and outpatient psychiatric treatment records and plaintiff's disability report. (R. 359). He assessed, on Axis I, "Cannabis Abuse (Rule Out Dependence)," "(Rule Out) Cannabis-Induced Delirium," and "(Rule Out) Schizoaffective Disorder, Bipolar Type." (Id.) On Axis II, he assessed "(Rule Out) Personality Disorder, NOS." (Id.). Dr. Stutts wrote, "Mr. Southward smokes one pack of cigarettes per day.  He reportedly uses marijuana, described as heavy daily use, at least two joints per day.  He drinks beer, two at a time, once per week. Mr. Southward reportedly receives substance abuse treatment at this time at East Central Mental Health for cannabis." (R. 360). Dr. Stutts concluded, after evaluation, that "Mr. Southward appears mildly impaired in his ability to understand, remember, and carry out instructions and to respond appropriately to supervision, co-workers, and work pressures in a work setting. His prognosis would be considered good with continued, appropriate treatment." (R. 362). Dr. Gordon Rankart, Psy.D., a non-examining state agency consultant, completed a Mental RFC Assessment and Psychiatric Review Technique Form thereafter,

observing that plaintiff's "[d]aily marijuana abuse is a contributor to impairments." (R. 375; Exhibits 8F, 9F).

On August 11, 2007, plaintiff sought treatment at Pri-Med for lower back pain at a level of "10." He stated that he had a motor vehicle accident years previously and had "occas[]ional flares." He was diagnosed with "Lumbar Pain" and received a Toradol injection. (R. 501-02). Four months later, on December 18, 2007, plaintiff went to the Baptist Health emergency department, complaining of back pain beginning four months earlier, when he had received a shot. His pain level was noted to be at a level "4." (R. 484, 488). The doctor diagnosed chronic low back pain and acute left sciatica and prescribed Indocin. (R. 483-95). On December 24, 2007, plaintiff returned to the Baptist Health ER, ambulating with a limp and reporting left lower back pain radiating down his left leg to his toes for the previous four months, worsening in the past one to two weeks. He indicated a pain level of "10" and stated that the Indocin was not working. The doctor assessed chronic low back pain. Plaintiff received a Toradol injection and prescriptions for Medrol, Tramadol, and Flexeril. (R. 469-81). A few days later, on December 27, 2007, plaintiff went to the emergency department at Jackson Hospital, limping and complaining of back pain radiating down his left leg for the past two months. He stated that his symptoms had developed gradually and appeared to be getting worse. He reported a history of a herniated disc. No abnormalities were noted on physical examination. The physician diagnosed recurrent sciatica and history of back pain. Plaintiff received a Ketorolac injection in the ER and discharge prescriptions

for Darvocet – a narcotic pain reliever – and Flexeril. (R. 429-35). On January 2, 2008, plaintiff returned to the Baptist Health emergency room complaining of back pain for the previous three months, radiating down his left leg. (R. 460). His straight leg raise was negative bilaterally, but the doctor noted decreased range of motion and muscle spasm in plaintiff's back. The physician diagnosed acute lumbar myofascial strain and acute low back pain, and he discharged plaintiff with prescriptions for Robaxin and Anaprox DS. (R. 455-467). Plaintiff again appeared at the Baptist Health ER three days later, on January 5, 2008, reporting back, leg and foot pain at a level of "10." (R. 440). The physician diagnosed acute lumbar myofascial strain, acute left sciatica and chronic low back pain. (R. 446). Plaintiff received a Decadron shot in the ER and prescriptions for Ultram and Soma. (R. 451, 453).

On January 20, 2008, at 11:20 a.m. plaintiff sought treatment at Pri-Med, complaining of severe pain in his left buttock and calf that had lasted for "months." (R. 499). The notes do not indicate that plaintiff was examined by a physician. (Id.). At 11:00 p.m. the next evening, plaintiff sought treatment for back pain, at a level of "10," at the Tallassee Community Hospital emergency room. The triage nurse recorded plaintiff's chief complaint as follows: "Around 5 pm playing Basketball – fell on left Buttock Now hurting in ↓ Back down left leg hasn't been[.]" (R. 505). During his examination by the physician, plaintiff reported "moderate" pain, at a level of "8" with an onset six hours earlier when he fell. He stated that he had not had similar symptoms previously. (R. 507). Upon examination of plaintiff's back, the doctor circled "muscle tenderness/spasm" on the examination form. He

ordered x-rays of plaintiff's lumbar spine and sacral bone. (R. 505, 507-08). The radiologist noted degenerative change (disc space narrowing) at L4-5 and L5-S1 (R. 509) and no abnormalities of the sacrum (R. 510); the ER physician recorded these x-ray results as "normal" and diagnosed lumbar spine strain (R. 508). Plaintiff received a Toradol injection in the ER and a prescription for Feldene. (R. 505-08).

An ALJ conducted an administrative hearing on February 22, 2010,[3] at which he heard testimony from the plaintiff, a vocational expert, and a psychologist. (R. 41-112; see also R. 172-81). The ALJ issued a decision on March 19, 2010. (R. 18-40). He concluded that plaintiff suffers from the severe impairments of: "schizoaffective disorder, bipolar disorder, personality disorder, polysubstance abuse, lumbosacral myofascial strain, lumbar degenerative disc disease, and sciatica." (R. 21). He found that plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing (R. 25-26). The ALJ found plaintiff to be capable of light work exertionally, with a sit/stand option and additional postural and non-exertional physical limitations, and with primarily marked mental limitations. (R. 27-28). The ALJ determined that plaintiff cannot perform any of his past relevant work and that, considering his substance abuse disorder, there are no jobs that exist in significant numbers in the national economy that the claimant can perform. (R. 29-30). However, based on the hearing testimony of the expert psychologist, the ALJ determined

---

[3] The hearing convened originally on May 28, 2009. (R. 9-12). However, the hearing was postponed at the request of plaintiff's counsel, so that he could obtain additional medical evidence. (R. 44-45).

8

that, if plaintiff stopped the substance abuse, he still could not perform his past relevant work but would retain the residual functional capacity to perform other jobs that exist in significant numbers in the national economy. (R. 35-36). The ALJ concluded, therefore, that plaintiff was not disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of the decision. (R. 36).

## DISCUSSION

Plaintiff's sole allegation of error is that the ALJ failed in his duty to develop the record because he did not order a consultative physical examination. (Doc. # 11, pp. 5-6). He contends that, because the administrative record did not include opinion evidence from a physician regarding plaintiff's physical limitations, "[t]he ALJ did not have adequate or sufficient medical evidence to make an informed decision in this case." (Id., p. 5).

In his analysis of the evidence at step two, the ALJ presented an accurate summary of plaintiff's treatment for back and leg pain. (See R. 24). Thereafter, in assessing plaintiff's RFC, the ALJ reasoned as follows regarding plaintiff's allegations of subjective symptoms, including pain:

> Regarding the claimant's alleged lumbosacral myofascial strain, lumbar degenerative disc disease, and sciatica, the claimant sought treatment for low back pain and left leg pain between August 2007 and January 2008. The records of evidence do not reveal any further treatment for complaints of back or leg pain or any other impairment. At Tallassee Community Hospital on January 21, 2008, the claimant had X-rays of the lumbar spine, which revealed degenerative disc changes at L4-5 and L5-S1 and coccyx X-rays, which were normal. The claimant was diagnosed with lumbar spine strain (Exhibit 6F). The records reveal no further treatment for this condition. At the hearing the claimant testified that he cooks and washes clothes and could shop if he had

money to spend.  He testified that he attends church once a month, visits, and watches sporting events from his car.  He testified that he can stand one hour, walk one or two hours, and sit three hours in an eight-hour day. The claimant's lack of treatment records does not support his allegations of pain.

*   *   *   *   *

In sum, the above residual functional capacity assessment is supported by the claimant's treatment records and lack of treatment records. The claimant received treatment for mental problems between June and September 2007 and for physical problems between August 2007 and January 2008. There are no further records of treatment, and the claimant testified that he does not take any medications.  Furthermore, it is noted that the claimant sat at the hearing for two hours without a problem. The claimant's statement that he experiences pain at a level 25 on a scale of 10 is simply not credible. The claimant's records do not support disabling impairments.

(R. 33-35).  The ALJ credited plaintiff's testimony to the extent that plaintiff experiences a "moderate degree of pain."  (R. 32).  As to plaintiff's physical limitations, the RFC assessed by the ALJ was for light work, with a sit/stand option, and: "frequent simple grasping and fine manipulation; occasional pushing/pulling of arm controls; occasional pushing/pulling of leg controls; frequent reaching; occasional stooping, crouching, kneeling; never crawling, climbing, or balancing; occasionally being exposed to moving machinery, marked changes in temperature and humidity, and driving automotive equipment; and never being exposed to unprotected heights." (R. 32).

"[R]egardless of whether a claimant is represented by counsel, the ALJ 'has a duty to develop a full and fair record.'" George v. Astrue, 338 Fed. Appx. 803, 805 (11th Cir. 2009)(citing Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995)).  Remand is not required, however, unless the administrative record as a whole is "inadequate or incomplete or

'show[s] the kind of gaps in the evidence necessary to demonstrate prejudice.'" George, 338 Fed. Appx. at 805 (citing Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997)). "Even though Social Security courts are inquisitorial, not adversarial, in nature, *claimants must establish that they are eligible for benefits*. The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." Ingram v. Commissioner of Social Security Administration, 496 F.3d 1253, 1269 (11th Cir. 2007)(emphasis added)(citing Doughty v. Apfel, 245 F.3d 1274, 1281 (11th Cir. 2001)).

The Eleventh Circuit has rejected the contention that an ALJ's RFC assessment cannot be supported by substantial evidence in the absence of a physical capacities opinion from a medical source. See Green v. Social Security Administration, 223 Fed. Appx. 915 (11th Cir. 2007)(unpublished opinion)(ALJ's RFC assessment based on treatment notes and without a physical capacities evaluation from a medical source determined to be supported by substantial evidence). In the present case, the absence of an RFC assessment by a medical source does not deprive the ALJ's RFC finding of substantial evidentiary support. The treatment notes of record regarding plaintiff's physical complaints, including the results of plaintiff's spinal x-rays, do not suggest that plaintiff is more limited than determined by the ALJ. Plaintiff's treatment for back and leg pain, as the ALJ observed, was confined to the period between August 2007 and January 2008. Six of plaintiff's seven visits to the doctor

for treatment of back and leg pain occurred within a brief period of approximately one month between December 18, 2007 and January 21, 2008. Thereafter, plaintiff received no treatment at all in the two years leading up to the administrative hearing in early 2010. Plaintiff's treatment notes demonstrate that none of the physicians who treated plaintiff for his physical complaints imposed restrictions, suggested further objective testing, or indicated that plaintiff's condition warranted more than conservative treatment. The treatment records are adequate to support the ALJ's assessment of plaintiff's physical capabilities.

## CONCLUSION

Upon consideration of the record as a whole, the court rejects plaintiff's contention that the ALJ erred by failing to order a consultative physical examination. Accordingly, the decision of the Commissioner is due to be affirmed. A separate judgment will be entered.

DONE, this 29th day of June, 2012.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE